**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

MARILYN BESS,
                    Appellant,

          v.

DEPARTMENT OF THE AIR FORCE,
                    Agency.

DOCKET NUMBER
DE-0752-14-0280-I-1

DATE: September 25, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

C. Jaye Mills, Esquire, and Marisa L. Williams, Esquire, Englewood, Colorado, for the appellant.

Megan N. Schmid and Lindsay Collins, Joint Base Andrews, Maryland, for the agency.

Bradford L. Buchanan, Esquire, Buckley Air Force Base, Colorado, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1     The agency has filed a petition for review of the initial decision that reversed its action removing the appellant from employment for unacceptable

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

performance under 5 U.S.C. chapter 43. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2    The appellant worked as a Housing Manager at Buckley Air Force Base in Colorado. Initial Appeal File (IAF), Tab 12 at 11. On July 17, 2013, the appellant's supervisor informed her that her performance was unacceptable and placed her on a performance improvement plan (PIP). IAF, Tab 45 at 6. On January 14, 2014, the appellant's supervisor[2] informed the appellant of his finding that she had failed to bring her performance up to a level above unsatisfactory during the PIP, and he was therefore proposing her removal. IAF, Tab 14 at 14-24. The proposing official found that the appellant's performance was unacceptable in all 7 of her critical elements, citing 30 examples of poor performance. *Id.* The decision sustaining the removal specified neither the

---

[2] The supervisor who proposed the appellant's removal was a different official than the supervisor who placed the appellant on the PIP.

critical elements failed nor the examples supporting such failure, but the deciding official testified at the hearing that the appellant failed three critical elements: critical element 1 pertaining to oversight of privatized housing and government housing, as evidenced by Examples A, B, and C (as cited in the proposal notice); critical element 3 pertaining to planning for family housing, as evidenced by Examples J, K, L, and O; and critical element 5 pertaining to funding for family and unaccompanied housing budgets, as evidenced by Examples L (repeated from critical element 3), Q, R, and S.  IAF, Tab 12 at 12; IAF, Tab 56, Initial Decision (ID) at 3.

¶3 Following a hearing, the administrative judge found that the agency failed to prove by substantial evidence that the appellant's performance was unacceptable in any of the three critical elements in question.  The administrative judge found that the agency failed to prove that the appellant's performance was unacceptable in any of the three examples relied on for critical element 1.  ID at 14-20.  As to critical element 3, the administrative judge found that the agency proved unacceptable performance in Examples J (preparation of funding documents), K (same), and L (preparation of safety suspense), but that the appellant did not have a reasonable opportunity to perform successfully in Examples J and K, and that the appellant's unacceptable performance in Example L was insufficient to support a finding that her performance was unacceptable in critical element 3 as a whole.  ID at 21-28.  As to critical element 5, the administrative judge found that the agency proved unacceptable performance in Examples L (preparation of safety suspense), R (funding requests), and S (same), but that the appellant did not have a reasonable opportunity to perform successfully in Examples R and S, and that the appellant's unacceptable performance in Example L was insufficient to support a finding that

her performance was unacceptable in critical element 5 as a whole. ID at 29-31.[3] The administrative judge ordered the agency to provide interim relief by reinstating the appellant's appointment to her former position, effective on the date of the initial decision, should it file a petition for review. IAF, Tab 57.

¶4    In a timely filed petition for review, the agency contends that the administrative judge erred in finding that it failed to provide the appellant an adequate opportunity to improve during the PIP as to some tasks and that the administrative judge erred in finding that it failed to prove by substantial evidence that the appellant's performance on other tasks, and the critical elements as a whole, was unacceptable. PFR File, Tab 1.[4] The appellant filed a timely response. PFR File, Tab 3. The appellant also filed what she termed a cross petition for review in which she alleged that the agency violated the administrative judge's interim relief order and asked the Board to enforce that order. PFR File, Tab 4.

---

[3] The administrative judge found that the appellant failed to prove any of her affirmative defenses: harmful procedural error; discrimination (race, sex, and age), and reprisal for protected equal employment opportunity (EEO )activity. ID at 31-37. On review, the appellant challenges the administrative judge's findings that she failed to prove discrimination and reprisal for protected EEO activity. Petition for Review (PFR) File, Tab 4. We affirm the administrative judge's findings as to these issues for the reasons stated in the initial decision.

[4] The agency also contends that the administrative judge erred by refusing to allow it to call the appellant as its first witness and directing the order of proof it must use. PFR File, Tab 1 at 26-27. We find that the agency has failed to establish error in this respect. It is well established that an administrative judge has wide discretion to control a Board proceeding. *See, e.g.*, *Sanders v. Social Security Administration*, 114 M.S.P.R. 487, ¶ 10 (2010); *Tisdell v. Department of the Air Force*, 94 M.S.P.R. 44, ¶ 13 (2003); 5 C.F.R. § 1201.41(b)(6), (10). The agency has made no showing that the administrative judge abused his wide discretion or that any rulings on the order in which testimony would be presented prejudiced the agency's ability to prove its case.

**ANALYSIS**

Dismissal of the agency's petition for review for its alleged failure to comply with the interim relief order is not warranted.

¶5     The agency's petition for review was accompanied by a declaration from the Chief of Civilian Personnel[5] certifying that the appellant was reinstated to her former position as Housing Manager effective on the date the initial decision was issued. PFR File, Tab 1 at 28. In her cross petition for review, the appellant conceded that she had been reinstated, but alleged that she had been reinstated to a different GS-12 position subject to a different position description and requested that the Board enforce the interim relief order. PFR File, Tab 4. In its response, the agency stated that it began a classification review in late 2013 of more than 70 positions, including the appellant's, which concluded that the appellant's position title of "Housing Manager" was inaccurate and should be corrected to the more accurate "Housing Element Chief/Asset Manager, that this reclassification became effective on January 25, 2015, almost 2 months after the issuance of the initial decision, and that the appellant "has kept the exact same rate of pay and benefits and the exact same supervisory duties and the exact reporting structure as she had prior to her removal for unsatisfactory performance." PFR File, Tab 7 at 5.[6]

¶6     The Board's regulations do not provide for petitions for enforcement of interim relief orders; such petitions apply only to final Board decisions. 5 C.F.R. § 1201.182(a). Board regulations do, however, allow an appellant to challenge an agency's certification that it has provided interim relief, and the Board may dismiss a petition for review if it finds the agency to be in noncompliance with its

---

[5] Throughout this decision, we refer to agency employees by title or by first letter of the surname.

[6] The parties filed several additional pleadings about this issue. *See* PFR File, Tabs 6, 8-10. These pleadings do not alter our conclusion below that the present record does not support a conclusion that the agency reinstated the appellant to an improper position.

interim relief obligations. 5 C.F.R. § 1201.116(b), (e). The present record does not support a conclusion that the agency reinstated the appellant to an improper position. Given this, and that it is undisputed that the appellant was restored to a GS-12 position and provided pay and benefits effective on the date the initial decision was issued, we find no basis to dismiss the agency's petition for review. If the appellant continues to believe that the agency has not provided her with status quo ante following the issuance of this Final Order, she may file a petition for enforcement pursuant to 5 C.F.R. §§ 1201.181-.183.[7]

<u>The administrative judge did not use an improperly high standard for addressing whether the agency provided the appellant with a reasonable opportunity to improve.</u>

¶7    The agency contends that the administrative judge failed to make a finding on whether it provided the appellant an overall reasonable opportunity to improve her performance, but instead imposed on it the obligation to prove that the appellant had been given a reasonable opportunity to improve for each individual duty required of her during the PIP. PFR File, Tab 1 at 8 n.1. In determining whether an agency has afforded an employee a reasonable opportunity to demonstrate acceptable performance, relevant factors include the nature of the duties and responsibilities of the employee's position, the performance deficiencies involved, and the amount of time which is sufficient to enable the

---

[7] An agency complies with a reinstatement order when it places the employee as nearly as possible in the status quo ante. *Taylor v. Department of the Treasury*, 43 M.S.P.R. 221, 224 (1990). Restoration to the status quo ante requires that the employee be placed back in her former position or in a position substantially equivalent in scope and status to her former position. *Id.* In deciding whether the status quo ante has been restored, the Board first determines whether the employee's former position still exists, and, if so, whether it exists at the same grade and classification levels. *Id.* at 224-25. To be in compliance with a Board order to reinstate an employee, an agency must generally return her to her former position; if it does not do so, and the former position still exists, the agency must show that it has a strong overriding interest requiring reassignment to a different position, and only after the agency has met this burden will the Board examine whether the position to which the employee was reassigned is substantially similar to the former position. *Mann v. Veterans Administration*, 29 M.S.P.R. 271, 274-75 (1985).

employee with an opportunity to demonstrate acceptable performance. *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 32 (2010). Where an employee's performance was unacceptable on one or more, but not all, components of a critical element, the agency must show substantial evidence that the appellant's performance warranted an unacceptable rating on the element as a whole. *Id.*, ¶ 36.

¶8      Putting to one side whether the administrative judge correctly found that the agency failed to afford the appellant a reasonable opportunity to demonstrate acceptable performance on Examples J, K, R, and S, we agree with the administrative judge's conclusion that the appellant's unacceptable performance on Example L—her failure to timely respond to a "higher headquarters" request to provide a report for Corded Window Covering Safety Alert and Safety Packages—did not warrant an unacceptable rating on either critical element 3 or 5 as a whole. *See* ID at 28, 31. Indeed, the agency makes no contention on review that this single example of poor performance is sufficient to warrant an unacceptable rating on either critical element 3 or 5 as a whole.

The administrative judge correctly found that the agency failed to prove that it afforded the appellant a reasonable opportunity to demonstrate acceptable performance on Examples J, K, R, and S.

¶9      The administrative judge found substantial evidence that errors in the appellant's funding documents in Examples J, K, R, and S were "numerous and significant" and that this poor performance implicated standards under critical elements 3 and 5. ID at 21, 31. The administrative judge nevertheless found that the appellant did not have an adequate opportunity to complete these tasks successfully. In so concluding, he observed that, while the appellant's position description indicated that she was supposed to have nine employees reporting to her, she had no more than five employees reporting to her prior to the PIP, and that she lost two more employees during the PIP. ID at 22. The administrative judge further noted that the majority of the errors relied on by the agency

occurred after these two employees left the unit. *Id.* The administrative judge likened the situation in this case to that in two precedential Board decisions, *Yetman v. Department of the Army*, 36 M.S.P.R. 425 (1988), and *Thompson v. Farm Credit Administration*, 51 M.S.P.R. 569 (1991). ID at 22-23. He cited *Yetman* for the proposition that the agency's standards were unreasonable and "impossible" where the appellant had been promised but not given two new staff members. *See Yetman*, 36 M.S.P.R. at 426. The administrative judge found that the instant appeal presented an even more difficult circumstance than that in *Yetman* because, instead of a promise for more staff going unfulfilled, the appellant actually lost two employees on whom she had relied during the PIP, and because the loss of these employees disrupted the circumstance with which the appellant had been accustomed. ID at 23. The administrative judge cited *Thompson* for the proposition that, while an agency may clarify a standard through written and oral instructions, it may not impose a higher level of performance than was previously required or called for by the critical element. ID at 23; *see Thompson*, 51 M.S.P.R. at 569.

¶10      The agency has made several objections to the administrative judge's findings, contending that: (1) the agency's Unit Manning Document, not the appellant's position description, sets the staffing level for the appellant's work unit, and the former document indicates that the proper level of staffing was six employees; (2) while relying on the loss of two subordinates during the PIP, the administrative judge "inexplicably fail[ed] to credit the Agency with the fact that it provided additional assistance to Appellant during her PIP through the services of" two other employees; (3) *Yetman* was inapposite because it was not even a chapter 43 case, but was an enforcement action where the appellant complained that she had not been given supervisory responsibilities over two positions that had been added to the organization during her absence caused by a chapter 43 removal; and (4) *Thompson*, which holds that an agency cannot remove an employee by imposing standards that require an inordinately high rate of accuracy

or unattainable standards of performance, was inapposite because the appellant was not held to absolute or unattainable standards.  PFR File, Tab 1 at 12-17.

¶11     The agency does not deny that the appellant lost the services of two long-term support personnel, Ms. C and Ms. S-P, during the PIP.  The appellant had emphasized the importance of the loss of these employees, both in her hearing testimony and in her closing argument to the administrative judge.  *See* Hearing Transcript (HT), Volume (Vol.) II at 211, 235-36; IAF, Tab 54 at 11, 15-16.  The agency did not address this issue in its closing argument.  *See* IAF, Tab 53.  The agency's contention that it supplied the appellant with the services of two additional employees during the PIP, Master Sergeant S and Ms. T, was supported in a minor way in testimony at the hearing.  A Deputy Director testified that Master Sergeant S assisted the appellant in her financial responsibilities "to some extent."  HT, Vol. I at 117-18.  The proposing official testified that "[w]e did arrange to have another warehouse person [Ms. T] come . . . to assist and help out."  *Id.* at 194-95.  These isolated and vague snippets of testimony, which did not detail the extent to which either Master Sergeant S or Ms. T assisted the appellant in her financial responsibilities, do not refute the administrative judge's analysis concluding that the loss of two employees significantly impaired the appellant's ability to successfully complete Examples J, K, R, and S.[8]

¶12     As for the applicability of *Yetman* and *Thompson*, it is true that *Yetman* was a compliance case in which the issue before the Board was whether the agency's "refusal, following appellant's reinstatement from an improper [chapter 43] removal, to assign appellant the full range of supervisory duties described in her

---

[8] The agency's contention, that its Unit Manning Document, which lists the staffing level for the appellant's work unit as six, is more persuasive than the appellant's position description, which sets the number at nine, misses the point.  As the administrative judge found, the appellant lost the services of two of her most experienced subordinates during the PIP.  However, this decision should not be construed to stand for the proposition that the performance standards required of an employee during a PIP are frozen in time at the point of the initial unsatisfactory appraisal leading to the PIP.

position description" violated its legal duty to restore the appellant to the status quo ante. *Yetman*, 36 M.S.P.R. at 426. In describing the merits proceeding that preceded the enforcement matter, the Board related that the agency failed to abide by a promise to add two employees to accommodate the increased workload of the appellant's unit, that the appellant was required to accomplish all the work in accordance with the performance standards without the additional employees, and that the administrative judge concluded that the appellant's performance standards were "unreasonable and impossible" under these circumstances. *Id.* We find nothing inappropriate about the administrative judge's use of *Yetman*. Turning to the *Thompson* decision, it states the proposition for which the administrative judge cited it: "an agency's attempt to clarify a standard through written and oral instructions may not impose a higher level of performance than was previously required or called for by the critical element." *Thompson*, 31 M.S.P.R. at 578. The administrative judge's inference that depriving a supervisor of the services of two experienced subordinates would effectively impose a higher level of performance than was previously required or called for was both reasonable and appropriate.

¶13    Ultimately, the question is whether the agency proved by substantial evidence that the appellant had a reasonable opportunity to successfully complete Examples J, K, R, and S during the PIP. For the reasons given by the administrative judge in the initial decision, we answer that question in the negative.

The agency did not prove by substantial evidence that the appellant's performance was unacceptable in Examples A, B, and C of critical element 1, Example O of critical element 3, or Example Q of critical element 5.

¶14    The Board will grant a petition for review when it is shown that the initial decision contains erroneous findings of material fact. 5 C.F.R. § 1201.115(a). To be material, an alleged factual error must be of sufficient weight to warrant an outcome different from that of the initial decision, and the petitioner must explain

why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. *Id.* The Board will not disturb an administrative judge's findings when he considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions of credibility. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987).

¶15    We find that the administrative judge complied with the requirements of *Crosby* and *Broughton* in making detailed findings of fact, and the agency has not pointed to evidence that leads us to conclude that the administrative judge made erroneous findings of material fact. In particular, the agency did not, as it was required to do, "explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error." 5 C.F.R. § 1201.115(a)(2). In some instances, the agency simply cited documentary evidence and asserted that it should prevail. *See* PFR File, Tab 1 at 22-23 (regarding Example O, the fence spreadsheet); *id.* at 26 (regarding Example Q, the alleged failure to spend $33.82 of expiring appropriated funds at the end of the fiscal year). Regarding Example B, relating to the preparation of the minutes of a meeting, we agree with the administrative judge's conclusion that most of the alleged "errors" constituted mere disagreements about writing style. ID at 16-18.

¶16    Regarding Example C, the General Officer Housing (GOH) Report, the agency refers the Board to the significant additions and changes made to the Report from the appellant's first submission to the final Report. PFR File, Tab 1 at 23-24. The final Report is indeed much more detailed and polished than the appellant's initial submission. *Compare* IAF, Tab 15 at 7-8, *with id.* at 16-18. What is absent from the agency's account is why it reasonably viewed the appellant's initial submission as unacceptable. The appellant testified why she believed her submission was adequate. HT, Vol. II at 238-41. We find no testimony from either the proposing or the deciding official explaining why the appellant should have known that something more or different was required of

her. We agree with the administrative judge's conclusion that there was a "lack of evidence" that the appellant's submission "did not have 'enough information as directed to summarize entitlements and issues of a GOH.'" ID at 19. We also note the administrative judge's observation that, in his two emails to the appellant about the Report, the proposing official did not say anything about it being unacceptable; he instead noted that another official "added a lot of information," asked the appellant to break her document into one sentence per bullet, and posed questions that appear not to have previously occurred to the proposing official. ID at 20.

¶17    Regarding Example A, the agency charged that the appellant failed to complete the staffing packages for a perimeter fence project "in an accurate and timely manner." IAF, Tab 14 at 14. The administrative judge first found that the agency failed to establish by substantial evidence that the appellant was given any deadline for the perimeter fence package, much less a deadline of July 31, 2014, as claimed by the agency. ID at 15. In so finding, he found credible the appellant's testimony that there had been no such deadline. *Id.* He further found that the only evidence of the July 31 deadline was the proposing official's testimony and a document he created called "PIP tracker" but that this entry appeared to have been created after the alleged deadline had passed. *Id.*

¶18    On review, the agency asserts that the timeliness of the appellant's submission was not even at issue, observing that, while the proposal notice charged that the appellant's submission was untimely, the deciding official did not make a specific finding on this. PFR File, Tab 1 at 18-19. Although it is true that the decision notice made no specific findings about the timeliness of the appellant's completion of Example A, the administrative judge understandably relied on the proposal notice because, as noted above, supra ¶ 2, the decision notice made no specific findings on any issues, including which critical elements the appellant failed during the PIP, and did not discuss any of the examples of allegedly unacceptable performance during the PIP. We nevertheless accept the

agency's concession that it is not contending that the appellant's performance on Example A was unacceptable because it was untimely submitted.

¶19        On the merits of the appellant's performance on this project, the administrative judge found as follows:

> Here, where I have found [the proposing official's] assertions of a July 31, 2013 deadline to be unreliable, I find it very difficult to give him the benefit of the doubt about the remainder of his charges related to the perimeter fence package. I find it even more difficult to give the benefit of the doubt here where the evidence shows that some management official other than [the proposing official] designated one of the appellant's employees, [Ms. S-P], to work on the package, and that the appellant only took over the task after [S-P] left the appellant's unit in September 2013. [The proposing official] testified, "I was not a witness to who it was assigned to, but I held [the appellant] accountable." I cannot credit [the proposing official's] assertions about the inadequacies of the appellant's work on the perimeter fence package when he indicates that the responsibility he is willing to give the appellant for the package is almost unlimited. Having considered the evidence before me, I find [the proposing official's] testimony about Example A cannot be credited at all. In the alternative, I find that his interpretation of the appellant's performance standards is unreasonably high. I therefore do not find any substantial evidence that the appellant's performance related to Example A, the perimeter fence package, was unsatisfactory.

ID at 16 (citations to record deleted).

¶20        Although the agency disputes these findings, it has not explained why the administrative judge's findings were incorrect nor identified specific evidence in the record that demonstrates the error. It was not error to make findings on the proposing official's credibility in this regard, as he was the appellant's first-level supervisor as well as the proposing official. His testimony as to why the appellant's work was unacceptable on this project was highly pertinent to whether the agency established that the appellant's performance was unacceptable.

Although the agency cites the deciding official's testimony, PFR File, Tab 1 at 19, that testimony was very general in nature, *id.*[9]

¶21    In sum, we find that the administrative judge correctly found that the agency failed to establish by substantial evidence that the appellant's performance was unacceptable during the PIP in critical elements 1, 3, or 5.

**ORDER**

¶22    We ORDER the agency to cancel the appellant's removal and restore her to her Housing Manager position effective March 27, 2014. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶23    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶24    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

---

[9] "Q: So what was the factual basis for your conclusion that she had failed critical element number one? A: The quality of the staffing products." HT, Vol. I at 257. "Q: Okay, And what was it that you felt was compelling evidence that she failed to do with [critical element] 1? A: An [i]nability to communicate. Q: With whom? A: The wing commander, myself, the inability to provide decent staff work is foundational. Q: So are you talking about written product that made its way up the chain? A: Yes." *Id.* at 297.

¶25       No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶26       For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order

before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

FOR THE BOARD:                                    _____
                                                  William D. Spencer
                                                  Clerk of the Board

Washington, D.C.

|  | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

    a. Outside earnings with copies of W2's or statement from employer.
    b. Statement that employee was ready, willing and able to work during the period.
    c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.